UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLENN WADE JETT, JR.,

    Petitioner,

v.

STEVEN RIVARD,

    Respondent.
_____/

Case No. 13-12524

HONORABLE AVERN COHN

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND
## DENYING A CERTIFICATE OF APPEALABILITY,

### I. Introduction

    This is a pro se habeas case under 28 U.S.C. § 2254. In 2011, petitioner Glenn Wade Jett, Jr. ("Petitioner") pleaded no contest to thirty-four crimes, including assault with intent to commit murder, unlawful imprisonment, conspiracy, torture, armed robbery, extortion, carjacking, first-degree home invasion, and possession of a firearm during the commission of a felony (felony firearm). He claims that there was no factual basis for some of his convictions, that he was sentenced on the basis of inaccurate information, and trial counsel was ineffective. Respondent, through the Michigan Attorney General, urges the Court to deny the petition. The Court agrees that Petitioner's claims do not warrant habeas relief. As such, the petition will be denied. The reasons follow.

## II. Background

### A. The Charges, Plea, and Sentence

Petitioner was charged in Saginaw County, Michigan with thirty-six counts related to an incident that occurred in late May 2010. The charges arose from allegations that Petitioner and his two co-defendants confined, assaulted, and tortured Dion Smith because they thought Smith had something to do with a murder. They were mistaken about Smith. During their encounter, they beat him, burned him with a hot metal object, and then went to his home where they threatened Smith's wife and sons and stole some of the family's personal property.

On May 24, 2011, Petitioner pleaded no contest in Saginaw County Circuit Court to the following charges: assault with intent to commit murder, M.C.L.§ 750.83; unlawful imprisonment, M.C.L. § 750.349b; conspiracy to commit unlawful imprisonment, M.C.L. § 750.157a, M.C.L.§ 750.349b; torture, M.C.L.§ 750.85; conspiracy to commit torture, M.C.L.§ 750.157a, M.C.L.§ 750.85; two counts of armed robbery, M.C.L.§ 750.529; two counts of conspiracy to commit armed robbery, M.C.L. § 750.157a, M.C.L. § 750.529; two counts of extortion, M.C.L. § 750.213; two counts of conspiracy to commit extortion, M.C.L.§ 750.157a, M.C.L.§ 750.213; carjacking, M.C.L.§ 750.529a; conspiracy to commit carjacking, M.C.L. § 750.157a, M.C.L. §750.529a; first-degree home invasion, Mich. Comp. Laws § 750.110a(2); conspiracy to commit first-degree home invasion, M.C.L.§ 750.157a, Mich. Comp. Laws § 750.110a(2); and 17 counts of felony firearm, M.C.L.§ 750.227b. In exchange for Petitioner's plea, the prosecution dismissed one count of conspiracy to commit first-degree murder and one count of felony firearm.

2

Additionally, the parties agreed that the minimum sentence would be 31 years plus 2 years for the felony firearm convictions, for a total minimum sentence of 33 years.

At sentencing, Petitioner asked the trial court for mercy because he had a drinking and drug habit and was not in his right mind at the time of the crimes. The trial court responded:

> This isn't an oops. You came here for the express purpose of murdering somebody that had a price on their head to collect the money. Fortunately you didn't murder anybody. But . . . . you grabbed the wrong guy. And then after torturing him, and beating him, and burning him, and chipping his teeth out with a gun barrel, you figured well, I have him, now I am going to rob him. You took his car. You indicated to him that you had every intent to kill him.
>
> Then, that wasn't bad enough, you went to his home and zip tied up his wife and children, threatening to kill them, robbing his home.

(Sentence Tr., 7, June 30, 2011.) The trial court then sentenced Petitioner to imprisonment as follows: two years for the felony firearm convictions; 225 months (18 years, 9 months) to 60 years for the assault; 60 months (5 years) to 15 years for unlawful imprisonment and conspiracy to commit unlawful imprisonment; 60 months to 20 years for extortion and the conspiracies to commit extortion;168 months (14 years) to 60 years for torture, conspiracy to commit torture, the armed robberies, and the conspiracies to commit armed robbery; 147 months (12 years, 3 months) to 20 years for the carjacking and conspiracy to commit carjacking; and 87 months (7 years, 3 months) to 20 years for the home invasion and conspiracy to commit home invasion.

The sentences for the felony firearm convictions were ordered to run concurrently with each other, but consecutively to the other sentences. The remaining sentences were ordered to run concurrently with each other with the exception of the sentences for

3

the carjacking and the home invasion, which were ordered to run concurrently with each other, but consecutively to the sentence for assault with intent to commit murder.

### B. Direct and Collateral Review

Petitioner filed an application for leave to appeal, contending that his conviction and sentence for the carjacking offense should be vacated because there was no factual basis for his plea on that charge. At Petitioner's request, Petitioner's appellate counsel withdrew and moved to dismiss the appeal. Petitioner was appointed substitute counsel. The Michigan Court of Appeals granted Petitioner's request to dismiss his appeal. See People v. Jett, No. 305476 (Mich. Ct. App. Sept. 27, 2011).

Petitioner's new counsel returned to the trial court and filed a motion to withdraw the no-contest plea to the carjacking, torture, assault, and conspiracy counts on the ground that there was an insufficient factual basis for those crimes. Counsel also requested resentencing on the basis that several offense variables of the state sentencing guidelines were inaccurately scored. The trial court denied the motion, finding that the offense variables were properly scored. The trial court also found that the police reports provided a sufficient factual basis for the plea.

In a subsequent delayed application for leave to appeal, Petitioner argued that the factual basis for several of the charges was lacking and that his sentence was based on inaccurate information and incorrectly scored sentencing guidelines. In a supplemental brief, Petitioner argued that trial counsel was ineffective during the plea process. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." People v. Jett, No. 308439 (Mich. Ct. App. May 23, 2012).

4

Petitioner raised the same three claims in the Michigan Supreme Court, which denied leave to appeal in a standard order.  See People v. Jett, 493 Mich. 893 (2012) (table).

### C.  Habeas Review

Petitioner then filed the instant petition. He incorporates by reference his state appellate briefs and raising the following claims:  (1) he should be permitted to withdraw his plea because the factual basis for several of the charges is lacking and his conviction is based on insufficient evidence; (2) he was denied his right to be sentenced on accurate information, and trial counsel was ineffective for failing to object to the scoring of several offense variables; and (3) trial counsel was ineffective during the plea process.

### III.  Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.' "

5

Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly,

> [w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, supra, at 102–103, 131 S.Ct. 770 (internal quotation marks omitted). This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be " ' "doubly deferential" ' " in order to afford "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. ——, –––—, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, ——, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011)).

Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

6

In simple terms, the Supreme Court has said that the standard of review is "difficult to meet" and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Pinholster, 131 S. Ct. at 1398 (quoting Harrington, 562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). The Supreme Court has further said that a federal court must guard against "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010).

Finally, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this resumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV. Petitioner's Claims

#### A. Factual Basis

Petitioner says that the factual basis for the carjacking, torture, assault, and conspiracy charges was lacking. He seeks to withdraw his no-contest plea to these charges, have the convictions and sentences on these charges vacated, and be resentenced accordingly. Respondent says this claim lacks merit.

A defendant has no absolute right to withdraw a guilty plea, United States v. Martin, 668 F.3d 787, 794 (6th Cir. 2012), or a no-contest plea, Shanks v. Wolfenbarger, 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005), and "there is no constitutional requirement that a trial judge inquire into the factual basis of a plea." Roddy v. Blair, 516 F.2d 1380, 1385 (6th Cir. 1975). "An individual accused of crime

7

may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." North Carolina v. Alford, 400 U.S. 25, 37 (1970).

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989).

Petitioner was represented by counsel at his plea. He stated during the plea proceeding that it was his own free choice to plead no contest. He also stated that no one had threatened him or promised him anything, other than what was stated in court, to make him plead no contest. (Plea Tr., 21-22, May 24, 2011.) The parties stipulated that reports generated by the Saginaw Police Department provided a factual basis for the plea and that the victims picked Petitioner's photograph out of a photo lineup. (Id. at 4.)

Applying Broce, Petitioner, with counsel by his side, told the Court that his plea was voluntary, and he stipulated to the use of police reports as a factual basis for his plea. As such, Petitioner is not entitled to relief on this claim.

### B. Sentence

Petitioner contends that the trial court sentenced him on the basis of inaccurate information and that his trial counsel was ineffective for failing to object to the scoring of several offense variables in the state sentencing guidelines. Petitioner seeks resentencing as relief.

Petitioner's contention that the trial court incorrectly scored the state sentencing guidelines is not a basis for habeas relief.  Whether the trial court misinterpreted or misapplied state sentencing guidelines "is a matter of state concern only," Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  The Supreme Court, however, has said that a sentence must not be founded on "misinformation of constitutional magnitude," United States v. Tucker, 404 U.S. 443, 447 (1972), or on "extensively and materially false" information that the defendant had no opportunity to correct through counsel, Townsend v. Burke, 334 U.S. 736, 741 (1948).

As explained below, Petitioner was not sentenced on the basis of inaccurate or misinformation.  In reaching this conclusion, the Court is mindful that, in a conspiracy case,

> [a] conspirator need not participate in all the objects of the conspiracy.  In general, each conspirator is held criminally responsible for the acts of his associates committed in furtherance of the common design, and, in the eyes of the law, the acts of one or more are the acts of all the conspirators.

People v. Grant, 565 N.W.2d 389, 396-97 (Mich. 1997).

### 1. Offense Variable 1

Petitioner asserts that he should not have received 25 points for offense variable 1, M.C.L. § 777.31 ("aggravated use of weapon").  Twenty-five points is appropriate if "[a] firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon." M.C.L. § 777.31(1)(a).

Petitioner concedes that, according to Smith's statement to the police, one of his co-defendants cut  Smith.  The presentence investigation report, moreover, states that

9

the co-defendant (Brittany Falconer) stabbed Smith and his son. See Mich. Dep't of Corr. Presentence Investigation Report, ECF No. 13, at 3 and 5. Thus, the evidence supported a score of 25 points for offense variable 1.

### 2. Offense Variable 2

Petitioner says that he was improperly assessed 15 points under offense variable 2, M.C.L. § 777.32 ("lethal potential of weapon possessed or used"). He presumes that he was assessed 15 points for possessing a "fully automatic weapon." M.C.L. § 777.32(1)(b). But the statute also permits a score of 15 points if "[t]he offender possessed or used a . . . harmful chemical substance," M.C.L. § 777.32(1)(a), and . Smith claimed that one of the defendants splashed him with bleach, which seeped into his cuts and caused him further pain. Mich. Dep't of Corr. Presentence Investigation Report, ECF No. 13, at 6. As a result, a score of 15 points was appropriate.

### 3. Offense Variable 6

Petitioner also objects to a score of 50 points for offense variable 6, M.C.L § 777.36 ("offender's intent to kill or injure another individual"). Fifty points is appropriate if the offender possessed premeditated intent to kill or killed the victim during the commission of a specified felony, or killed a peace officer or corrections officer. M.C.L.§ 777.36(1)(a). Petitioner contents that he should not have been scored 50 points under this variable because the victim was not killed and any intent to kill was non-existent or abandoned.

According to the presentence investigation report, the defendants informed . Smith "that there was a $10,000 hit on his head" and that they had flown in from New York "to take care of this hit." Mich. Dep't of Corr. Presentence Investigation Report,

10

ECF No. 13, at 3.  Furthermore, at one point during the ordeal Petitioner removed a mask from his face, and when his co-defendant asked Petitioner why he had removed the mask, Petitioner replied, "He ain't go[ing to] live anyway."  Id.  Because these comments indicate an intent to kill, offense variable 6 was accurately scored.

### 4.  Offense Variable 7

Petitioner received 50 points for offense variable 7, M.C.L. § 777.37 ("aggravated physical abuse").  A score of fifty points is appropriate if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."  M.C.L.§ 777.37(1)(a).   Petitioner contends that there was no evidence of torture and, therefore, he should not have been assessed 50 points.

The presentence report indicates that, after the defendants poured water on Smith, Petitioner pressed a hot metal object on Smith's back.  Smith was burned multiple times and suffered severe burns to his back.  Mich. Dep't of Corr. Presentence Investigation Report, ECF No. 13, at 4.  Offense variable 7 was correctly scored at 50 points.

### 5.  Offense Variable 8

Petitioner received 15 points for offense variable 8, M.C.L.§ 777.38 ("victim transportation or captivity").  Petitioner claims that 15 points was erroneous because Smith voluntarily entered the house where the crimes occurred and was not transported anywhere else.  Fifteen points, however, may be assessed not just for transportation, but where the victim "was held captive beyond the time necessary to commit the offense."  M.C.L. § 777.38(1)(a).

11

Here, the record shows that defendants held and tormented the victim after they realized they had the wrong man and while two of the defendants went to Smith's home and terrorized his family. Because Smith was held beyond the time necessary to commit the crime of assault with intent to commit murder, 15 points was appropriate for offense variable 8.

### 6. Offense Variable 9

Petitioner received 10 points under offense variable 9, M.C.L.§ 777.39 ("number of victims"). A score of 10 points applies where "[t]here were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss." M.C.L. § 777.39(1)(c).

Petitioner argues that Smith was the only victim of the assault with intent to commit murder. The record, however, shows that during the assault on Smith, one of the defendants threatened to kill Smith's friend in order to acquire the keys to Smith's car, which the friend was holding. Smith then agreed to tell his friend to give his keys to the defendants, because he feared that the defendants would carry out their plan to kill his friend. Mich. Dep't of Corr. Presentence Investigation Report, ECF No. 13, at 4.

At least two victims (Smith and his friend) were placed in danger of physical injury or death. The evidence therefore supported a score of 10 points for offense variable 9.

Overall, Petitioner was not sentenced on the basis of materially false information or on misinformation of constitutional magnitude. Therefore, his sentencing claim lacks merit. And because the trial court did not rely on materially inaccurate information, defense counsel was not ineffective for failing to object to the scoring of the sentencing

guidelines. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." Coley v. Bagley, 706 F.3d 741, 752 (6th Cir.), cert. denied, 134 S. Ct. 513 (2013). Petitioner is not entitled to relief on this claim.

### C. Trial Counsel

For his final claim, Petitioner contends that trial counsel was ineffective during the plea process. Specifically, Petitioner says that trial counsel gave him bad advice when he encouraged Petitioner to plead guilty and that trial counsel did not investigate the charges to determine whether they could withstand adversarial testing. Petitioner says that he was prejudiced by trial counsel's actions because he received a longer sentence than he would have received if trial counsel had challenged the factual basis for the charges.

Although Respondent argues that Petitioner did not exhaust state remedies for this claim, Petitioner raised the claim in a supplemental brief in the Michigan Court of Appeals and in his appeal to the Michigan Supreme Court. Thus, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

#### 1. Clearly Established Supreme Court Precedent

A defendant has the right to effective assistance of counsel when considering whether to accept an offer to plead guilty. Lafler v. Cooper, 132 S. Ct. 1376, 1387 (2012). To prevail on this claim, Petitioner must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient in a case where the defendant pleaded guilty or no-contest, the defendant

13

must show that the advice he received was not within the range of competence demanded of attorneys in criminal cases. Hill v. Lockhart, 474 U.S. 52, 56-57 (1985).

The "prejudice" prong of the two-part Strickland test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 59. Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded no contest and would have insisted on going to trial. Id,

### 2. Application

Petitioner cannot satisfy the Strickland standard. The victims identified Petitioner in a photo array. Their statements supported the charges that Petitioner assaulted Smith, confined and humiliated him, tortured him, tried to extort money from him, took his car and other personal belongings, invaded his home when his wife and sons were present, possessed a firearm, and conspired with the co-defendants. Given these facts and Petitioner's failure to state a viable defense, trial counsel acted reasonably in negotiating a plea agreement and encouraging Petitioner to plead no-contest rather than go to trial.

Furthermore, the plea agreement called for the dismissal of the most serious charge (conspiracy to commit first-degree murder). That charge alone would have subjected Petitioner to life imprisonment if he had gone to trial and been convicted of the charge. See M.C.L.§ 750.316(1); Mich. Comp. Laws § 750.157a(a). By pleading no contest, Petitioner avoided the possibility of a life sentence and received a minimum sentence of 33 years, which could result in his release on parole at the age of 57 because he was 24 years old at sentencing.

Moreover, Petitioner cannot say that he would have gone to trial if it were not for his counsel's advice.

Overall, Petitioner has not shown that the trial counsel's performance during the plea process was deficient nor was Petitioner prejudiced. Petitioner is not entitled to habeas relief on this claim.

## V. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability.

## VI. Conclusion

Accordingly, for the reasons state above, the petition is DENIED. This case is DISMISSED. A certificate of appealability is also DENIED.

SO ORDERED.

                                                s/Avern Cohn
                                                AVERN COHN
Dated: September 4, 2015          UNITED STATES DISTRICT JUDGE
       Detroit, Michigan